IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MARK E. CUMMINS and ) | Case No.  04-40617 |
| ELAINE CUMMINS, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| MARK E. CUMMINS and ) | Adversary No.  04-4050 |
| ELAINE CUMMINS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HEALTH MIDWEST CREDIT UNION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Debtors Mark and Elaine Cummins filed this adversary proceeding seeking a declaratory judgment as to the value of a second mortgage held by Health Midwest Credit Union (Health Midwest). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1).  The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Health Midwest is allowed a secured claim in the amount of $39,293.08 and an unsecured claim in the amount of $12,936.92.

## FACTUAL BACKGROUND

In approximately April of 2002 the Cummins executed a Promissory Note with Country Wide Home Loans (Country Wide). Country Wide secured the obligation with a Deed of Trust on the Cummins' residence located at 8810 East 47th Street, Kansas City, Missouri 64129 (the Residence). On November 18, 2002, the Cummins executed a Promissory Note with Health Midwest. Health Midwest secured that obligation with a Second Deed of Trust on the Residence and a security interest in a 2002 Mitsubishi Galant and a 2003 Mitsubishi Eclipse. On February 5, 2004, the Cummins filed a Chapter 13 bankruptcy petition and scheduled a debt to Country Wide in the amount of $101,909.07 and a debt to Health Midwest in the amount of $52,230.00. They also scheduled the Residence with a value of $91,986.00, the 2002 Mitsubishi Galant with value of $12,611.00, and the 2003 Mitsubishi Eclipse with a value of $18,667.00.

On March 1, 2004, the Cummins filed this adversary proceeding asking me to determine the validity of Health Midwest's lien as to the Residence. On May 11, 2004, this Court held a hearing. At the hearing both the Cummins and Health Midwest presented evidence as to the value of the Residence. The parties agree that the total value of the automobiles is $31,278.00. They also stipulated that the amount of Country Wide's claim is now $103,984.92.[1] Ken Collyard (Collyard) appeared as an expert witness for the Cummins and William D. Woods, (Woods) appeared as an expert witness for Health Midwest. Collyard testified that the appraised value of the Residence is $82,500.00. Woods testified that the appraised value of

---

[1] Pl. Ex. # 3.

the Residence is $112,000. In order to determine the extent of Health Midwest's secured claim, I must determine the fair market value of the Residence.

## DISCUSSION

I begin with the relevant provisions in the Bankruptcy Code (the Code). Section 1322 of the Code authorizes a debtor's Chapter 13 plan to modify the rights of holders of secured claims, unless the claim is secured only by a lien on the debtor's residence:

> (b) Subject to subsections (a) and (b) of this section, the plan may–
>
> . . .
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.[2]

In this case, the Second Deed of Trust held by Health Midwest is secured not only by the Residence, but by the two automobiles. The Cummins' proposed plan may, therefore, modify Health Midwest's claim, however, section 1322(b)2) does not determine the modification. For that, I turn to section 506(a) of the Code. Section 506(a) provides that an allowed claim is secured to the extent of the value of the collateral and unsecured as to any amount remaining:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such secured claim.[3]

---

[2] 11 U.S.C. § 1322(b)(2).

[3] 11 U.S.C. § 506(a).

Country Wide's lien is secured only by the Residence, therefore, it is not subject to modification. And there is no dispute as to the value of the automobiles. Thus, the extent to which Health Midwest's claim is secured will be determined by the fair market value of the Residence.

I turn now to the testimony of the two expert witnesses. Collyard testified for the Cummins. Counsel for Health Midwest objected to this testimony on the grounds that Collyard is not a certified appraiser qualified to issue an appraisal under state law.[4] I overruled that objection. The Federal Rules of Evidence are binding on this Court, and Rule 702 permits me to consider expert testimony that will assist me in determining a fact in issue:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[5]

Collyard testified that he has been a real estate broker for over 25 years, and that he has appraised over 500 properties. He stated he does not hold himself out to be a certified appraiser and so informed the Cummins. Nevertheless, I find that Collyard's knowledge and experience enables him to provide some information that will assist the Court in determining the value of the Residence, and that the opinion offered by him is admissible under Federal Rule of Evidence 702.

---

[4] Mo. Stat. Ann. § 339.501.1 (Supp. 2001).

[5] Fed. R. Evid. 702.

Collyard stated that he believes the Residence has a fair market value of $82,500.00. He bases his opinion on the fact that the house was built in 1928, that there is functional obsolescence, that there is deferred maintenance, that the roof may leak, that there may be water infiltration around one fireplace, that the plumbing is galvanized, that the driveway needs an overlay, and that there may be asbestos around the heating pipes. He admitted that he did not test for asbestos or inspect the roof. He stated he did not do a comparative market analysis.

Woods testified that he believes the fair market value of the Residence is $112,000.00. He stated he has been a certified real estate appraiser since 1977, that he owns his own real estate appraisal company, and that he has done thousands of appraisals in Missouri and Kansas.

I find that Woods has technical or other specialized knowledge that will assist this Court in determining the value of the Residence, that the opinion offered by him is based on a proper factual foundation, and that the opinion is reliable. Therefore, the opinion offered is admissible under Rule 702 of the Federal Rules of Evidence.

Woods presented his Real Estate Appraisal Summary.[6] The Summary contains a comparative analysis of five other properties that Woods claims are comparable to the Residence. The first property sold for $109,500.00, the second property sold for $110,370.00, the third property sold for $116,200.00, the fourth property sold for $118,000, and the fifth property sold for $116,995.[7] Woods stated that he based his appraisal on the comparable sales and on the fact that the Residence is a unique, well-constructed home on a

---

[6] Def. Ex. # 2.

[7] *Id.*

5

very large lot. He said the Residence did, indeed, have deferred maintenance and that it was "messy" when he inspected it, otherwise, his appraised value would have been higher. He also noted that the Jackson County Tax Assessor appraised the real estate at $93,856.00,[8] and that the tax assessment is generally below fair market value.

Having observed both expert witnesses, and having reviewed Woods' Real Estate Appraisal Summary and Collyard's affidavit, I adopt Woods' report. Comparative market analysis is a key factor in determining the value of real estate. Collyard essentially concluded that the Residence is unique to its neighborhood and that, therefore, he could not find comparable properties to be used in assessing value. But Woods searched elsewhere in the area for homes of comparable construction and age, in neighborhoods with comparable characteristics. His methodology comes closer to reflecting how the market values property. I, therefore, find that the Residence has a value of $112,000.00.

Having determined the value of the Residence, in order to determine the amount of Health Midwest's secured claim, I must determine the value of all of the collateral that secures the claim. The Residence is valued at $112,000.00 and the automobiles are valued at $31,278.00, for total collateral value of $143,278.00. The stipulated amount of Country Wide's lien is $103,984.92, leaving equity in both the Residence and the automobiles of $39,293.08. Health Midwest, which has a total claim of $52,230.00, therefore, has an allowed secured claim in the amount of $39,293,08 and an allowed unsecured claim in the amount of

---

[8] Pl. Ex. # 2.

$12,936.92.

      An Order in accordance with this Memorandum Opinion will be entered this date.


                /s/ Arthur B. Federman
                  Bankruptcy Judge


Date:   May 13, 2004.

Copies electronically Mailed to:
Richard Fink
L.K. Rosenfeld
Robert Brandom